NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000469
28-SEP-2016
08:29 AM

NOS. CAAP-15-0000469 and CAAP-15-0000557

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


MITCHELL T. TOJIO, Plaintiff-Appellee,
v.
JAMES M. PANOZZO, Defendant-Appellee,
and
CITY AND COUNTY OF HONOLULU, Real Party in Interest-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-1898)


MEMORANDUM OPINION
(By:  Foley, Presiding J., Reifurth and Ginoza, JJ.)

Real Party in Interest-Appellant City and County of Honolulu (**C&C**) appeals from the (1) "Findings of Fact, Conclusions of Law and Order Granting Motion to Enforce Settlement Against [C&C] and for Sanctions Filed 3/17/15" (**FOFs/COLs/Order**) entered on May 21, 2015 and (2) "Order Awarding Plaintiff's Attorney's Fees and Costs Pursuant to the [FOFs/COLs/Order] Filed 5/21/15" entered on July 10, 2015 in the Circuit Court of the First Circuit[1] (**circuit court**).

On appeal, C&C contends[2] the circuit court (1) denied

---

[1] The Honorable Karen T. Nakasone presided.

[2] C&C's opening brief fails to conform to Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4), which provides in pertinent part:

**Rule 28.    BRIEFS.**

(continued...)

C&C due process by sanctioning C&C without affording it a hearing and (2) abused its discretion when it sanctioned C&C by ordering it to pay reasonable attorney's fees and expenses for Plaintiff-Appellee Mitchell T. Tojio (**Tojio**).

## I. BACKGROUND[3]

On July 18, 2013, Tojio filed a lawsuit against Defendant-Appellee James M. Panozzo (**Panozzo**)[4] for damages arising out of a motor vehicle accident. Panozzo allegedly rear-ended Tojio, an on-duty police officer for the Honolulu Police Department on July 22, 2010. Tojio sought damages including, but not limited to, the lost wages and incurred medical expenses that C&C paid through worker's compensation. C&C, who was not a party in the lawsuit, asserted a statutory lien in the amount of $97,551.55 for the workers compensation benefits provided to Tojio following the accident.

The circuit court conducted four settlement conferences over seven months. During the third settlement conference on February 4, 2015, Panozzo made a final settlement offer of $45,000, which Tojio indicated he wanted to accept. The circuit

---

[2](...continued)

. . . .

    **(b) Opening brief.** Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:

    . . . .

    (4) A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) <u>where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency.</u>

(Emphasis added.) Counsel for C&C is warned that future noncompliance with HRAP Rule 28(b) may result in sanctions.

[3] This background is taken primarily from the circuit court's FOFs/COLs/Order, which C&C does not challenge on appeal. Findings of fact not challenged on appeal are binding on this court. <u>Okada Trucking Co., Ltd. v. Bd. of Water Supply</u>, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002).

[4] Panozzo has not filed a brief in this appeal.

court tried to find a compromise between Tojio and C&C, but the parties could not settle on a compromised lien amount. C&C represented to the circuit court and to the other parties that it would be filing a motion to intervene to pursue Tojio's claims at trial because C&C viewed Panozzo's settlement offer as inadequate. The circuit court set February 13, 2015 as the deadline for C&C to file its motion to intervene and for Tojio's counsel to withdraw.

On February 11, 2015, C&C confirmed in writing its intention to file a motion to intervene in a letter sent to Tojio, stating that it did not believe Tojio was representing the best interest of C&C on its workers' compensation lien.

On February 13, 2015, Tojio's counsel filed a timely motion to withdraw as counsel.

C&C, however, did not file a motion to intervene by the circuit court's February 13, 2015 deadline. Instead, C&C filed a notice of workers' compensation lien and wrote a letter to the circuit court indicating that it was not going to intervene in the case. Describing the impact of C&C's decision to renege on its stated position on intervening, the circuit court stated:

> 30. [C&C's] conduct was extremely disruptive to the settlement process, orderly procedures for settlement conferences, and orderly scheduling of motions and trials.
>
> 31. [C&C's] actions of not filing a motion to intervene, when it had insisted that intervention was necessary, impeded the settlement process, and wasted the time of the court and other parties. Scheduling decisions, discovery completion, and trial preparation decisions for the 4/13/15 jury trial that had been made in reliance upon [C&C] filing a motion to intervene, were impacted by [C&C's] failure to file the motion.[5]

(Footnote omitted.) On February 17, 2015, the circuit court issued an "Order to Show Cause" directed to counsel for C&C "to show why, in view of [C&C's] February 13, 2015 letter to the court, [C&C] should not be sanctioned for undue interference with orderly court procedures, in violation of [Rules of the Circuit Courts of the State of Hawaiʻi (RCCH)] Rule 12.1."

---

[5] C&C does not challenge these findings by the circuit court in its points of error.

The circuit court ordered the parties to attend the fourth and final settlement conference, which took place on February 19, 2015. Tojio, Panozzo, and C&C came to a settlement agreement. Panozzo agreed to pay Tojio $45,000 in general damages, and C&C agreed to accept $7,250 from the total settlement to resolve and satisfy the workers' compensation lien. C&C requested that Tojio "substantiate" his estimated $12,500 in "costs," to which Tojio agreed.

Based upon the settlement agreed to by the parties, the circuit court vacated the trial date, trial deadlines, and the order to show cause hearing. The circuit court also ordered the parties to submit a stipulation to dismiss the case within thirty days.

Tojio provided C&C an itemized report of Tojio's costs with related receipts, totaling $12,370.05, which was close to Tojio's estimation of costs at $12,500. C&C then raised what the circuit court described as "unreasonable and improper objections" to Tojio's claimed costs. The circuit court elaborated on C&C's objections:

> 42. First, [C&C] argued that $390.15 of [Tojio's] $12,370.05 total costs was not "taxable," as if the case went to trial and there was a non-prevailing party who would be taxed with costs post-trial. This case settled and did not go to trial. Whether or not any of [Tojio's] incurred costs were "taxable" against a non-prevailing party post-trial was completely irrelevant.
>
> 43. Second, [C&C] alleged that [Tojio's] counsel's law firm only "substantiated" $10,364.79 out of the $12,370.05 in total costs incurred, and the lack of receipts for postage and copying invalidated $2,015.66 of [Tojio's] costs. [Tojio's] counsel explained to [C&C] that the postage and copying charges of $2,015.66 had no receipts because it was done in-house. [Tojio's] counsel also provided [C&C] with a cost spreadsheet. [C&C] did not respond to his explanation or ask for anything more specific or anything further. In this court's view, [Tojio's] counsel's representation, as an officer of the court, to [C&C] regarding the amount of such costs should have been sufficient.
>
> 44. Third, [C&C] made a new and novel argument that costs incurred before the lawsuit was filed were not "valid" and should be excluded from [Tojio's] total costs.[6]

---

[6] C&C does not challenge these findings by the circuit court in its points of error.

(Footnote omitted.) C&C proposed that Tojio pay C&C $8,317.60 instead of the $7,250 the parties had previously agreed upon because C&C viewed Tojio's costs as "unsubstantiated" and "non-taxable."

Tojio filed a Motion to Enforce Settlement on March 17, 2015, which included a request to sanction C&C and a declaration by Tojio's counsel regarding C&C's alleged misconduct. Ruling on Tojio's Motion to Enforce Settlement on May 21, 2015, the circuit court made its conclusions of law (**COLs**):

> 51. To the extent any of these [COLs] are Findings of Fact, they are to be so construed.

> 52. [Hawaii Revised Statutes (**HRS**) § 603-21.9(6) (1993)] confers upon circuit courts, the inherent power to make and award such judgments, decrees, and orders, "and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them."

> 53. RCCH Rule 1 requires that, "these rules shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."

> 54. RCCH Rule 12.1(a)6), pertaining to settlement conferences, provides for the imposition of sanctions for "undue interference with orderly procedures."

> 55. As a general proposition, "in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it." Miller v. Manuel, 9 Haw. App. 56, 63 (1991) (quoting In re Estates of Thompson, 226 Kan. 437, 440 (1979)). There has been no bad faith or fraud alleged by [C&C].

> 56. The award of post-trial taxable costs is a rule that applies to the taxation and award of costs to a prevailing party after a trial. See [Hawai'i Rules of Civil Procedure (**HRCP**)] Rule 54(d)(1) ("costs shall be allowed as of course to the prevailing party unless the court otherwise directs"). The cases relied upon by [C&C] relate to the taxation of costs after a trial or a dismissal of claims. See, e.g., Kikuchi v. Brown, 110 Hawai'i 204, 210 (App. 2006) (finding that [the] burden was on the non-prevailing party to show that the claimed costs were unreasonable). In this case, neither [Tojio] nor [C&C] went to trial.

> 57. It is undisputed that [C&C's] attorneys never distinguished between post-trial taxable and non-taxable costs during the court's settlement conferences. Nor did they raise such a distinction at any time before or during, the formal placement of settlement terms on the record on 2/19/15. During the recital of the settlement terms, [C&C's] attorney simply stated, "we would ask for [Tojio] to substantiate the $12,500.00 in costs."

58. If [C&C] wanted to differentiate [Tojio's] costs between post-trial taxable and non-taxable costs, it was incumbent on [C&C] to have expressly raised that issue with [Tojio] and the court during the formal settlement conferences. It never did, and cannot belated[ly] do so post-settlement. See Standard Mgmt., Inc. v. Kekona, 99 Hawai'i 125, 134 (App. 2001) ("It follows that the purely subjective, or secret, intent of a party in assenting is irrelevant in an inquiry into the contractual intent of the parties.").

59. The record is also clear that [C&C's] attorney did not mention any exclusion, or distinction, regarding pre-suit costs. See Earl M. Jorgensen Co. v. Mark Const., Inc., 56 Haw. 466, 470-71 (1975) ("The existence of mutual assent or intent to accept is determined by an objective standard. A party's words or acts are judged under a standard of reasonableness in determining whether he has manifested an objective intention to agree. All reasonable meanings will be imputed as representative of a party's corresponding objective intention. Unexpressed intentions are nugatory when the problem is to ascertain the legal relations, if any, between two parties."). [C&C] is foreclosed from making such a belated distinction post-settlement.

60. The in-house copying costs ($1,967.30) and postage costs ($48.36) were necessary costs incurred in the ordinary course of preparing and prosecuting [Tojio's] claims against [Panozzo] up to the time of settlement. There are no receipts for these charges because the copying and postage were done in-house. [Tojio's counsel] confirmed and verified the total charges incurred with a spreadsheet. As an officer of the court, [Tojio's] counsel verified the costs to [C&C] and nothing more was required.

61. [C&C] consented to this settlement in the amount of $45,000.00, general damages only, net of the covered loss deductible, in consideration for a payback on its workers' compensation lien in the amount of $7,250.00. [Tojio] estimated his costs at the time of settlement to be $12,500.00.

62. [Tojio's] counsel agreed, on the record, that even if [Tojio's] costs ended being higher than $12,500.00, [C&C] would still receive the $7,500.00 from the settlement.

63. [C&C] asserts in its Opposition that the "parties agreed that [Tojio] would be reimbursed up to $12,500 for costs incurred as a result of this case subject to substantiation of costs." (Emphasis added). Thus, [C&C] acknowledges that it agreed to accept $7,250.00 to extinguish the lien based on costs incurred by [Tojio] up to $12,500.00.

64. The first $12,370.05 costs figure submitted by [Tojio] to [C&C], was timely submitted and complied with the settlement term that [Tojio] substantiate up to the $12,500.00 which he estimated were his costs, at the time settlement was reached.

65. [Tojio] executed the settlement agreement on 3/11/15, and promptly delivered the $7,250.00 check to [C&C]. There was a meeting of the minds and both [Tojio] and [Panozzo] fulfilled their obligations under the

6

settlement agreement. [C&C] did not fulfill its obligations under the settlement agreement.[7]

(Brackets and footnote omitted.)

The circuit court sanctioned C&C for its conduct, stating:

> 66. [C&C's] post-settlement objections to the manner in which [Tojio] substantiated his copying and postage costs, and quibbling over non-existing "taxable" costs and pre-suit costs distinctions, were obstructionist, unreasonable, and constitute[d] bad faith. [C&C's] conduct in precipitating this settlement dispute, violated RCCH Rule 12.1.
>
> 67. [C&C's] conduct, in this post-settlement dispute, is even more egregious, following [C&C's] prior interference with court procedures caused by [C&C's] extremely tardy and never-filed motion to intervene.
>
> 68. [C&C's] conduct has wasted 6.5 hours of in-court time spent on the four settlement conferences, additional court time expended on out-of-court negotiations, and court resources used to schedule, vacate, and reset the various court dates and deadlines. [C&C's] conduct disrespected the settlement process and unduly interfered with this court's procedures.
>
> 69. Sanctions must be meaningful and must be an effective deterrent to future misconduct and disregard of court rules, including the spirit, intent, and purpose of such rules, which are designed to promote the "just, speedy, and inexpensive" resolution of court matters. See RCCH Rules 1, 12.1(a)(6); HRS § 603-21.9.
>
> 70. Sanctions in the context of settlement, must be imposed in a manner to promote respect for the time and resources spent by the court and by the other parties on the settlement process. In this case, the following sanctions against [C&C], based on its conduct described supra, are warranted and justified.

The circuit court ordered C&C to pay for all time spent by Tojio's counsel, including reasonable attorney's fees and expenses, on the settlement dispute. The circuit court also ordered C&C to pay $1,000 to the circuit court "for wasted court time."[8]

C&C filed its notice of appeal on June 17, 2015.

---

[7] The findings of fact contained in the circuit court's FOFs/COLs/Order were not challenged or disputed by C&C in its points of error in this appeal.

[8] Beyond its general due process argument, C&C does not challenge that part of the sanction ordering payment of $1,000 to the court. Rather, C&C challenges the part of the sanction ordering it to pay Tojio's attorney's fees and costs related to the settlement dispute.

## II.   STANDARD OF REVIEW

"Regardless of whether sanctions are imposed pursuant to statute, circuit court rule, or the trial court's inherent powers, such awards are reviewed for an abuse of discretion." Kaina v. Gellman, 119 Hawai'i 324, 329, 197 P.3d 776, 781 (App. 2008) (citing Gap v. Puna Geothermal Venture, 106 Hawai'i 325, 331, 104 P.3d 912, 918 (2004)).

## III.   DISCUSSION

### A.   C&C's Entitlement to a Hearing

C&C argues that "[t]he circuit court should have allowed [C&C] a hearing on its Order to Show Cause if it was all along planning to impose sanctions because [Tojio's counsel] had agreed on the record to substantiate his costs and [C&C] had an unquestionable duty to ensure Tojio met this condition of the settlement." In support of its argument, C&C states, "the Hawai'i Court Rules generally require hearings before sanctions are imposed. For instance, HRCP Rule 11(c) permits sanctions only after notice and a reasonable opportunity to respond . . . ." C&C contends, "[b]y analogy, [C&C] maintains that it should have had notice and an opportunity to be heard before sanctions were imposed."

The circuit court initially scheduled a hearing for March 6, 2015 on its Order to Show Cause "to show why, in view of [C&C's] February 13, 2015 letter to the Court, [C&C] should not be sanctioned for undue interference with orderly court procedures, in violation of RCCH Rule 12.1." The circuit court vacated the Order to Show Cause and the hearing when the parties reached a settlement at the February 19, 2015 settlement conference. When C&C reneged on the agreement, Tojio filed a Motion to Enforce the Settlement, which included a request for sanctions and a declaration by Tojio's counsel asserting C&C's alleged misconduct, for which the circuit court held a hearing on April 17, 2015. C&C was given the opportunity at the hearing to oppose the Motion to Enforce the Settlement Agreement and the imposition of sanctions for its conduct. Therefore, C&C's argument that it did not have an opportunity to be heard before

8

sanctions were imposed is without merit.

B.   **The Circuit Court's Sanctions**

C&C next argues that the circuit court abused its discretion in issuing sanctions because "[a]t no time did [C&C's] counsel commit any bad faith or pursue unethical arguments because it only sought to receive proper verification of [Tojio's counsel's] costs."  C&C also argues that RCCH Rule 12.1(a)(6) is an improper basis for imposing sanctions.

As a basis for its order of sanctions, the circuit court cited HRS § 603-21.9(6), which authorizes the circuit courts "[t]o make and award such judgments, decrees, orders, and mandates . . . and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them."  HRS § 603-21.9(6) is a "legislative restatement of the inherent powers doctrine[.]"  Kukui Nuts of Hawaii, Inc. v. R. Baird & Co., Inc., 6 Haw. App. 431, 437, 726 P.2d 268, 272 (1986).  "The courts . . . have inherent power to curb abuses and promote a fair process, including the power to impose sanctions in the form of attorneys' fees for abusive litigation practices."  Enos v. Pac. Transfer & Warehouse, Inc., 79 Hawai'i 452, 458, 903 P.2d 1273, 1279 (1995) (citations, internal quotation marks, and brackets omitted); Kukui Nuts, 6 Haw. App. at 437, 726 P.2d at 272).  The circuit court's inherent power to issue sanctions is limited, however, to conduct that "constitute[s] or [is] tantamount to bad faith."  Kukui Nuts, 6 Haw. App. at 436, 726 P.2d at 272.

> [I]n order to facilitate a meaningful and more efficient appellate review, an order imposing sanctions should set forth findings that describe, with reasonable specificity, the perceived misconduct (such as harassment or bad faith conduct), as well as the appropriate sanctioning authority (e.g., HRCP Rule 11 or the court's inherent power).

Enos, 79 Hawai'i at 459, 903 P.2d at 1280.

In this case, the circuit court provided a thorough explanation of the basis for its sanction award in COLs 66 through 70.  Specifically, the circuit court concluded that C&C's objections to Tojio's stated costs "were obstructionist,

9

unreasonable, and constitute[d] bad faith." Additionally, after repeated assurances that C&C would take over litigation for Tojio's counsel, and then its failure to file a motion to intervene, in conjunction with C&C's agreement to a settlement amount, followed by improper objections to the settlement amount,[9] the circuit court was justified in concluding that C&C acted in bad faith. The circuit court did not abuse its discretion in sanctioning C&C.

## IV. CONCLUSION

Therefore, the (1) "Findings of Fact, Conclusions of Law and Order Granting Motion to Enforce Settlement Against City and County of Honolulu and for Sanctions Filed 3/17/15" entered on May 21, 2015 and (2) "Order Awarding Plaintiff's Attorney's Fees and Costs Pursuant to the Findings of Fact, Conclusions of Law and Order Granting Motion to Enforce Settlement Against City and County of Honolulu and for Sanctions Filed 3/17/15, Filed 5/21/15" entered on July 10, 2015 in the Circuit Court of the First Circuit are affirmed.

DATED: Honolulu, Hawai'i, September 28, 2016.

On the briefs:

Duane W.H. Pang
Paul K. Hoshino
Robert M. Kohn
Monica K.S. Choi
Deputies Corporation Counsel
City and County of Honolulu
for Real Party in Interest-
Appellant.

Vladimir Devens
Keani Alapa
(Law Offices of Vladimir P.
Devens)
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

---

[9] We emphasize that these findings of fact upon which the circuit court's imposition of sanctions were based are undisputed on appeal and are therefore binding upon this court. Okada Trucking Co., 97 Hawai'i at 458, 40 P.3d at 81.

10